FILED
2013 Mar-04 PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SHEILA DOLLAR BRADY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:11-CV-03722-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

# MEMORANDUM OF DECISION

Plaintiff Sheila Dollar Brady ("Plaintiff") brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Income Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I. Proceedings Below

Plaintiff filed an application for SSI under Title XVI of the Act on March 27, 2008. [R. 62, 105-108]. Plaintiff also filed an application for DIB under Title II of the Act on April 9, 2008. [R. 60, 109-114]. Plaintiff alleged a disability onset date of March 31, 2006. [R. 105, 111]. Plaintiff's applications were denied on May 29, 2008. [R. 21]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 19, 2009. [R. 76-77, 33-58]. In his December 14, 2009 decision, the ALJ denied disability benefits concluding that Plaintiff was not disabled under Section 216(i), Section 223(d), or Section 1614(a)(3)(A) of the Act. [R. 28].

After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1]. 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 47 years old and had completed the tenth grade. [R. 39]. Plaintiff had previously worked as a cashier, a lighting assembler, a shipping and receiving clerk, a part time rug cleaner, and a dental assistant. [R. 51-52]. In her applications for disability benefits, Plaintiff noted that chronic headaches, depression, carpal tunnel, and restless leg syndrome limited her ability to work. [R. 129].

At the hearing Plaintiff gave testimony regarding the specifics of her condition. Plaintiff alleged that her headaches caused her to miss days from work and interfered with her ability to work as a cashier because she could not comprehend how much change to return to customers. [R. 40]. Plaintiff stated that her headaches cause pain starting an eight (8) out of ten (10) on the doctor's pain scale. [R. 43]. Plaintiff further alleged that no medicine helps her headaches. [R. 50].

Three or four weeks before her hearing, Plaintiff was diagnosed with seizures. [R. 41]. Plaintiff testified that the seizures occur "off and on all day" and that when she suffers an onset, she "blacks out." [R. 48]. Plaintiff explained that she does receive a warning when the seizures occur because she feels numbness and tingling on the right side of her body. [R. 48]. Plaintiff also testified that when she drives, if she starts to feel the tingling feeling, she has time to pull off the road before the seizure occurs. [R. 48].

Plaintiff also testified that she suffers from fibromyalgia [R. 40], which causes her entire body to hurt. [R. 44]. Plaintiff also claimed she suffered from knee pain because she has "no cartilage in her knees" and that this pain makes it difficult for her walk. [R. 44]. Plaintiff testified

that her depression prevents her from enjoying activities like quilting and painting. [R. 47]. Plaintiff further noted that she has trouble with her short-term memory, gets exhausted easily, does not sleep well at night, and gets agitated when she is around groups of people. [R. 44-45]. Plaintiff stated that she occasionally cooks and does laundry. [R. 41-42]. Plaintiff also testified that she had recently taken a cross-country road trip by car to Nevada and a cross-country motorcycle trip to Arizona. [R. 42, 57].

In support of her claim, Plaintiff presented medical records beginning with an October 2007 entry from Dr. Sheri Swader of Cullman Primary Care Neurology, which diagnosed Plaintiff with chronic headaches. [R. 237]. Dr. Swader prescribed Depakote and ordered a sleep deprived EEG to further evaluate whether Plaintiff was having seizures. [R. 241]. Dr. Swader examined Plaintiff again on December 3, 2007 and changed her headache prescription. [R. 238]. Dr. Swader noted that Plaintiff's EEG was normal and she showed no signs of spells or seizures. [R. 237-238]. In April 2008, Dr. Swader changed Plaintiff's prescription once again and ordered CT scan after various medications did not help Plaintiff's symptoms. [R. 235].

On February 27, 2008, Plaintiff was rear-ended in a car accident and sought treatment at Cullman Regional Medical Center. [R. 217-230]. Plaintiff was admitted to the emergency room and complained of mild pain in her neck and back. [R. 224]. X-rays of Plaintiff's back revealed no nerve impingement and no malalignment or fractures. [R. 230]. Plaintiff was prescribed medication for her pain and was instructed to follow-up with her doctor. [R. 227].

On March 10, 2008, Plaintiff visited Dr. Joseph Johnson for the first time stating that she needed a new primary care physician. [R. 299]. Plaintiff was referred by Dr. Swader. [R. 299]. Dr. Johnson indicated that Plaintiff was in "no acute distress" and that she "move[d] all extremities

well." [R. 299]. He further noted that remaining tenderness in her neck and back was consistent and expected after the car accident. [R. 300]. He indicated that Plaintiff would follow-up with Dr. Swader regarding her chronic headaches. [R. 300]. Plaintiff returned to Dr. Johnson's office on March 21, 2008 complaining of continued neck pain. [R. 298]. Plaintiff was in no acute distress and Dr. Johnson prescribed another medication for her neck pain. [R. 298]. He also ordered an MRI, which was conducted on March 25, 2008 at Cullman Primary Care Diagnostic Imaging Center. [R. 297]. Dr. Gregg Delgado's notes indicate the MRI was not particularly clear due to Plaintiff's moving during the scan, but Dr. Delgado did state that it showed one bulging disk. [R. 297].

Dr. Johnson referred Plaintiff to Dr. Cheng Tao, M.D., for a consultation based upon the MRI results. [R. 293]. Dr, Tao's examination notes indicate that Plaintiff continued to complain of neck pain. [R. 294]. Dr. Tao commented that Plaintiff was able to walk on her toes and heels without difficulty and exhibited a full range of motion in all joints. [R. 294]. Dr. Tao reviewed the MRI and found a mild disc bulge but no significant cord compression. [R. 294]. Dr. Tao referred Plaintiff for a course of physical therapy and informed her surgery would not be necessary. [R. 295].

Plaintiff saw Dr. Johnson again on May 7, 2008 and May 28, 2008. [R. 289, 290]. Treatment notes from these two visits indicate Plaintiff was experiencing little relief from her headaches. [R. 289, 290]. Plaintiff was in no acute distress during either visit, and Dr. Johnson noted that Plaintiff continues to suffer from chronic headaches, possible anxiety/depression, insomnia, and restless leg syndrome. [R. 289, 290].

On May 7, 2008, Guendalina Ravello, Ph.D., completed a Psychiatric Review Technique. [R. 244-257]. Dr. Ravello concluded that Plaintiff suffered from no severe impairments. [R. 244]. Dr. Ravello did note that Plaintiff's treating physician notes indicated Plaintiff suffered from slight

anxiety. [R. 249]. Dr. Ravello's report states that Plaintiff did not take psychiatric medications or receive any mental health treatment. [R. 256]. Dr. Ravello determined that Plaintiff has mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. [R. 254]. Dr. Ravello noted Plaintiff showed no signs of decompensation. [R. 254].

Dr. Bharat Vakharia, M.D., performed a Social Security Disability Examination of Plaintiff on May 20, 2008. [R. 259]. Dr. Vakharia noted that Plaintiff complained of leg shakes and jerks (due to restless leg syndrome), fatigue, pain in both knee joints, constant headaches, and sensitivity to light and noise. [R. 259-60]. Dr. Vakharia's examination notes indicate that Plaintiff's movement of her musculoskeletal system and cervical spine was "minimally limited." [R. 260]. Plaintiff's legs were both shaking and Plaintiff "was trying to grab her leg." [R. 260]. Dr. Vakharia also commented that "extreme flexion of the knee was causing pain." [R. 260-261]. However, Plaintiff's hip movement was fairly normal, and Plaintiff had good hand grips and a normal gait. [R. 261]. Dr. Vakharia concluded that Plaintiff could not walk on her tip toes or the heels of her feet and that she could not squat more than ninety (90) degrees and stand up. [R. 261]. Dr. Vakharia diagnosed Plaintiff with restless leg syndrome and the possibility of stress or anxiety reaction without ruling out voluntary tremor, daily chronic headache, chronic fatigue, bilateral knee pain, and anxiety and depression. [R. 261]. Dr. Vakharia also indicated that Plaintiff was told she had fibromyalgia.[1] [R. 261].

[1] It is unclear to the court whether Dr. Vakharia himself diagnosed Plaintiff with fibromyalgia or listed this diagnosis from another physician under his considerations.

On May 28, 2008, a non-physician disability examiner, Patti Hood ("Hood"), completed a Residual Functional Capacity Assessment ("RFC") of Plaintiff. Regarding exertional limitations, Hood concluded that Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk with normal breaks for about six (6) hours in an 8-hour work day, and that Plaintiff required no limitations on pushing and/or pulling. [R. 265]. Hood determined Plaintiff had no postural, visual, or communicative limitations. [R. 266-68]. Regarding manipulative limitations, Hood determined that Plaintiff was limited in her ability to reach in all directions but had no limitations in her handling, fingering, or feeling. [R. 267]. Due to Plaintiff's chronic headaches, Hood concluded that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, fumes, odors, gases, dusts, and gases, and that Plaintiff should avoid all exposure to hazards such as unprotected heights and machinery. [R. 268]. Hood noted that no treating or examining physicians statements were on file regarding Plaintiff's physical capacities. [R. 270]. Hood further indicated that she found Plaintiff's subjective claims regarding Plaintiff's condition to be *partially* credible. [R. 269].

Throughout the summer and early fall of 2008, Plaintiff saw Dr. Swader for several follow-up visits regarding her headaches. [R. 273-82]. Dr. Swader's treatment notes reflect that Plaintiff's headaches continued but that she did show some improvement. [R. 274]. During all of these visits, Plaintiff's recent and remote recall was intact. [R. 273-82]. Plaintiff was in "mild distress" during two visits over this period of time. [R. 275, 277].

On July 11, 2008, Plaintiff sought treatment at Mental Healthcare of Cullman. [R. 318]. Her intake/evaluation form indicates that she was seen for an evaluation of mental functioning. [R. 318]. At this time, she was noted to have a Global Functioning Assessment ("GAF") of 50. Treatment

notes from follow-up visits with Dr. Sultana Begum, a psychiatrist, reflect a diagnosis of major depressive disorder. [R. 306]. Treatment notes through May 2011 indicate Plaintiff had impaired short and long term memory, attention, and concentration. [R. 385, 391]. Plaintiff was never hospitalized for psychiatric treatment. [R. 384].

On October 12, 2009, in addition to continuing her treatment of Plaintiff's headaches, Dr. Swader diagnosed Plaintiff with spells consistent with seizures. [R. 358]. Follow-up treatment notes from February 17, 2010 again indicate that Plaintiff continued to have spells consistent with partial seizures. [R. 363]. In April 2010, Plaintiff told Dr. Swader that her spells were increasing in frequency, which Dr. Swader noted were likely related to Plaintiff's stress. [R. 368]. On October 20, 2010, Dr. Swader commented that she was not certain all of Plaintiff's spells were true seizures. [R. 371]. On January 18, 2011, Dr. Swader again saw Plaintiff who complained she was having one to three spells a day. [R. 376]. Treatment notes from this visit indicate Plaintiff was not compliant with her medications (perhaps due to a lack of insurance). [R. 377]. Dr. Swader was unable to determine how many of the spells were true seizures. [R. 377]. Plaintiff saw Dr. Swader on April 18, 2011 for another follow-up visit. [R. 373]. Plaintiff complained that she was having eight to ten spells per day. [R. 373]. Dr. Swader once again noted that there was difficulty with medication compliance and that she was not certain if Plaintiff's spells were seizures or nonepilectic events. [R. 375]. Dr. Swader's notes from Plaintiff's April 18, 2011 visit also indicate that Plaintiff was "leaving" with her boyfriend on May 5, 2011 and would not return to home until September 2011. [R. 374].

In response to a hypothetical posed from the ALJ, a vocational expert ("VE") testified at the hearing that someone of Plaintiff's age, education, prior work history, and with her RFC could

perform work as a cashier. [R. 55-56]. The VE also testified that there would be other jobs, such as laundry sorter and inspector, that someone like Plaintiff could perform. [R. 56]. In response to a question from Plaintiff's representative, the VE testified that headaches with a pain level of eight (8) on almost a daily basis would preclude employment. [R. 56].

**II. ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ

determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Here, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2011. [R. 23]. The ALJ then concluded that Plaintiff has not engaged in substantial gainful activity since December 31, 2006, the alleged onset date. [R. 23]. The ALJ found that Plaintiff suffers from headaches and a seizure disorder, both of which are "severe" impairments as defined by the Act. [R. 23]. Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor medically equal the requirements for any impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart F, Appendix 1. [R. 23].

According to the ALJ, Plaintiff's subjective complaints about her impairments (and their impact on her ability to work) are not fully credible due to their inconsistency with the medical evidence established in the record and Plaintiff's own statements about cross-country car and motorcycle trips and her testimony that despite her seizures she continues to drive and believes she would have enough time to pull off the road if she felt a seizure onset. [R. 24-27]. After consideration of the entire record, the ALJ found that Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) and that she has the following limitations: she can occasionally lift 20 pounds and frequently lift, carry, push, and pull 10 pounds; she can stand and/or walk for a total of 6 hours during an eight hour workday; she can sit with normal breaks for 6 hours during an eight hour workday; she can occasionally climb ramps and stairs; she cannot work on ladders, ropes or scaffolds for safety reasons; she can occasionally balance, stoop, kneel, crouch, and crawl; she limited to frequent in regard to overhead reaching; she should avoid concentrated exposure to noise and vibrations; she should not work around unprotected heights or hazardous moving machinery; and she should not work around loud noises. [R. 24].

The ALJ concluded that Plaintiff is able to perform past relevant work as a cashier because this work does not require the performance of work-related activities precluded by her residual functional capacity.[2] [R. 27]. Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act, and therefore, is not entitled to DIB or SSI. [R. 28].

---

[2]The Appeals Council specifically ruled that Plaintiff's past work as a cashier was not past relevant work because there was insufficient evidence in the record to determine whether Plaintiff's past work as a cashier constituted substantial gainful activity. [R. 6]. The Appeals Council also found that Plaintiffs was unable to perform her past work as a shipping and receiving clerk because the requirements of that job exceeded that permitted by her residual functional capacity. [R. 6]. The Appeals Council also concluded that, based upon the VE's testimony, there are a significant number of jobs in the national economy that Plaintiff could perform, such as laundry sorter and inspector. [R. 7].

## III. Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. [Pl.s Mem. 13]. Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because: (1) the ALJ failed to include non-severe impairments in his residual functional capacity findings and (2) the ALJ failed to properly consider Plaintiff's impairments in combination. [Pl's Mem. 7, 9].

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be

affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

## V. Discussion

After careful review, the court concludes the ALJ's decision is due to be affirmed for the following reasons.

### A. The ALJ Did Not Err in Failing to Include Non-Severe Impairments in His Residual Functional Capacity Findings

Plaintiff argues that the ALJ did not consider Plaintiff's non-severe impairments in making his RFC findings. [Pl.'s Mem. 7]. Specifically, Plaintiff contends that ALJ overlooked symptoms associated with her non-severe impairments of depression and anxiety. [Pl.'s Mem. 8-9]. It is true that an ALJ must consider all the record evidence, including evidence of non-severe impairments when making an RFC determination. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). Contrary to Plaintiff's assertions, the ALJ did just that here.

Plaintiff first contends that the ALJ overlooked one GAF score of 50 noted by Dr. Bertam during Plaintiff's initial visit at Mental Healthcare of Cullman. [Pl.'s Mem. 8; R. 321]. Second, Plaintiff complains that the ALJ did not consider evidence in treatment notes from Mental Healthcare of Cullman indicating a family history of depression, decreased attention and concentration, poor memory, weight loss, mood swings, and insomnia. [Pl.'s Mem. 8-9]. Finally, Plaintiff claims that the ALJ overlooked abnormal EEG results. [Pl.'s Mem. 9].

The court initially notes that "there is no requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision. . . is not a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [claimant's] medical

condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). This court's standard of review is "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Id.* Although the ALJ did not specifically refer to Dr. Betram's GAF score of 50 and did not discuss at length every single symptom associated with her depression, the ALJ properly summarized Plaintiff's treatment records from Mental Healthcare of Cullman and specifically noted that on two subsequent visits, in September 2008 and July 2009, Plaintiff had a GAF score of 55. [R. 26, 314, 333]. The ALJ also commented that Dr. Swader's treatment notes indicated that Plaintiff's recent and remote recall were normal, Plaintiff showed no evidence of decompensation, and that Plaintiff's subjective complaints about depression and anxiety were inconsistent with her testimony that she continued to drive, did some housework, laundry, and cleaning, and had recently taken two cross country trips. [R. 26]. Moreover, Plaintiff's claim that the ALJ did not consider abnormal EEGs is inconsistent with his findings. Specifically, the ALJ stated that an EEG performed in August 2009 was abnormal in that it showed signs of some cerebral atrophy. [R. 26]. The ALJ also considered Plaintiff's normal EEG test results. [R. 26]. Furthermore, the ALJ noted that Plaintiff's testimony that she continued to drive and felt as though she would have time to pull off the road if she felt a seizure happening was inconsistent with frequent uncontrolled seizures. [R. 26]. Based on the record as a whole, this court finds that the ALJ properly considered Plaintiff's non-severe mental health symptoms and that his RFC assessment is supported by substantial evidence. *See id.* As such, the Commissioner's decision is not due to be reversed on this ground.

**B. The ALJ Did Not Err in Failing to Consider Plaintiff's Impairments in Combination**

Plaintiff asserts that the ALJ recited the evidence documenting Plaintiff's headaches and seizures but that he did not properly consider her impairments in combination. [Pl.s' Mem. 9-10]. This argument completely misses the mark. Without question, where a claimant alleges several impairments, the ALJ must consider them in combination. *See e.g., Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). However, the Eleventh Circuit has repeatedly held that an ALJ satisfies this duty by stating that he considered whether the claimant suffered from any impairment or combination of impairments. *See Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that the ALJ's statement that [claimant] did not have an 'impairment, individually or in combination' that met one of the listed impairments...shows that the ALJ considered the combined effects of [claimant's] impairments during her evaluation"); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (reversing a district court's determination that an ALJ did not consider or discuss the cumulative effects of a claimant's impairments where the ALJ explictly stated that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations); *Jones*, 941 F.2d at 1533 (finding that the ALJ's conclusion that claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations "evidence[d] consideration of the combined effect of [claimant's] impairments).

Here, the ALJ specifically stated that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals one of the listed impairments" in evaluating step three of the process. [R. 23]. Contrary to Plaintiff's assertions, this statement suffices to demonstrate that

the ALJ did consider the combined effects of her impairments. *See e.g.*, *Hutchinson*, 408 Fed. Appx. at 327; *Wilson*, 284 F.3d at 1224-25; *Jones*, 941 F.2d at 1533. Therefore, the Commissioner's decision is not due to be reversed on this ground.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Therefore, the Commissioner's decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this 4th day of March, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE